UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

LUIS LEBRON, an individual, an
DAVID N. EMIHOVICH, an individual,
JOSE ROQUE, an individual,
on behalf of themselves and all others similarly situated,

    Plaintiff,

v.                             **COMPLAINT - CLASS ACTION**

GREGORIO A. TEJERA, individually,
LAZARO W. DIAZ-FERNANDEZ, individually,
JOSE LEYVA, individually,
and JOHN DOES 1-100,

    Defendants.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE CONSUMER PROTECTION ACT**
**JURY DEMAND**

1. The so-called "JUNK CARS" text message has been a pox upon the cellular telephones of Florida consumers for more than a year. On a weekly basis, Defendants GREGORIO A. TEJERA, LAZARO W. DIAZ-FERNANDEZ, JOSE LEYVA, and JOHN DOES 1-100 have sent out tens of thousands of unwanted text messages in an attempt to increase the bottom line of their scrap metal business. Put more succinctly, Defendants are largely regarded as the most detested telemarketers in the State of Florida, and at the statutory minimum of $500 dollars

per unlawful text message, are now indebted to Florida consumers in an amount exceeding one billion dollars ($1,000,000,000.00).

Moreover, by effectuating unauthorized text message calls to Florida consumers (also known as "SMS Messages"), and to a lesser extent consumers nationwide, Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because many such consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life and waste data storage capacity.

In order to redress these injuries, Plaintiffs, on behalf of themselves and the proposed class of similarly situated individuals, brings this suit under the 47 U.S.C. § 227 *et seq.*, the Telephone Consumer Protection Act (the "TCPA"), which specifically prohibits unsolicited voice and text calls to cell phones. On behalf of the class, Plaintiffs seeks an injunction requiring Defendants to cease all commercial text message advertisements and an award of statutory damages to the class members, together with costs and reasonable attorney's fees[1].

## JURISDICTION AND VENUE

---

[1] To the extent that Plaintiffs' counsel is entitled to recover a fee, said fee is voluntarily waived by the undersigned attorney who requests same to be re-directed to an appropriate *cy pres* designee with this Court's approval.

2. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Venue in this District is proper because Plaintiffs reside here and Defendants conduct business in this District. This Court also has jurisdiction over Plaintiffs' individual claims pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

## PARTIES

3. Plaintiff, LUIS LEBRON ("Plaintiff" or "MR. LEBRON"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

4. Plaintiff, DAVID N. EMIHOVICH ("Plaintiff" or "MR. EMIHOVICH"), is a natural person, and citizen of the State of Florida, residing in Palm Beach County, Florida.

5. Plaintiff, JOSE ROQUE ("Plaintiff" or "MR. ROQUE"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

6. Defendant, GREGORIO A. TEJERA, is a Florida citizen, who assists in the operation of a business which purchases used or inoperable vehicles for the purpose of redeeming said vehicles for their scrap metal value. Defendant is individually liable for the actions described herein pursuant to 47 U.S.C. § 217. *See generally*, *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 2001 TCPA Rep. 1198 (W.D.Tex. Aug 17, 2001).

7. Defendant, LAZARO W. DIAZ-FERNANDEZ (also known as "Lazaro Diaz" or "Lazaro Diaz-Fernandez"), is a Florida citizen, who assists in the operation of a business which purchases used or inoperable vehicles for the purpose of redeeming said vehicles for their scrap metal value. Defendant is individually liable for the actions described herein pursuant to 47 U.S.C. § 217. *See generally*, *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 2001 TCPA Rep. 1198 (W.D.Tex. Aug 17, 2001). Upon information and belief, documents exist within the public record which associate Defendant with at least one of the telephone numbers contained within the body of one of the "JUNK CARS" text message mass-dialed to the public.

8. Defendant, JOSE LEYVA, is a Florida citizen, who assists in the operation of a business which purchases used or inoperable vehicles for the purpose of redeeming said vehicles for their scrap metal value. Defendant is individually liable for the actions described herein pursuant to 47 U.S.C. § 217. *See generally*, *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 2001 TCPA Rep. 1198 (W.D.Tex. Aug 17, 2001). Upon information and belief, documents exist within the public record which associate Defendant with at least one of the telephone numbers contained within the body of one of the "JUNK CARS" text message mass-dialed to the public.

9. Defendants, JOHN DOES 1-100, represent all unknown persons or entities which also sent unauthorized "JUNK CARS" text messages to members of the putative class in violation of the TCPA.

## TEXT MESSAGING

10. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

11. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

12. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

13. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service

providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

16. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

17. Plaintiffs have never done business with Defendants or provided Defendants with their cellular telephone number in any manner whatsoever.

6

18. Irrespective of having no prior relationship with Defendants, Plaintiffs received numerous unwanted commercial text messages from Defendants; this practice is commonly referred to as "mobile spamming." Some examples of the spam messages sent by Defendants are as referenced below:

[On or about October 19, 2011]

Cell 305-824-7923 COMPRO CARROS//$400 WE BUY JUNK CARS//$400 cell 305-824-7923

[On or about May 4, 2012]

$475 CASH!:LET'S SAVE OUR PLANET RECYCLE YOUR OLD VEHICLE CALL NOW 305-812-6713

[On or about March 21, 2012]

$400-475 WE BUY JUNK CARS (COMPRAMOS CARROS PARA RASTRO) CALL 786-354-3727

[On or about May 3, 2012]

$475 CASH!:LET'S SAVE OUR PLANET RECYCLE YOUR OLD VEHICLE CALL NOW 305-815-9607 TEXT NO TO STOP!!

19. On their face, the text messages at issue are blind, impersonal solicitations to consumers who have not even requested an advertisement from Defendants. Plaintiffs have received dozens of other similar messages from Defendants; the unwanted text messages come from a variety of Florida area

7

codes. In support of same, Plaintiffs attach the following complaints published on various consumer websites. *See* Exhibit "A".

20. Upon information and belief, thousands of similar and/or identical text messages were sent to a bulk list of cellular telephone numbers, which includes the names Plaintiffs and the putative class members (by Defendants or Defendants' agents); the messages were sent *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the auto-dialer used by Defendants had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

21. In support of Plaintiffs' contention that the "JUNK CARS" text message has affected thousands of Florida consumers, Plaintiff attaches hereto a Sun-Sentinel article entitled: *Pesky, unwanted junk car text annoying many in South Florida* (published on April 3, 2012). *See* Exhibit "B".

22. In further support of Plaintiffs' contention that the "JUNK CARS" text message are in fact sent by the named Defendants, Plaintiff attaches hereto a Miami New Times article entitled: *"Junk Cars" Text Spams Miami Phones; One Man Fights Back* (published on April 5, 2012). *See* Exhibit "C".

23. Upon information and belief, Plaintiffs maintain that all text messages at issue were sent from an internet service or telephone number, which is owned,

8

assigned, leased, operated, or otherwise used by Defendants or Defendants' agent(s).

24.     Upon information and belief, a bulk list of cellular telephone numbers was acquired by Defendants and purchased from an unknown third party in Florida who has no relationship to Plaintiffs or any of the putative class members. *See* Exhibit "C" wherein GREGORIO A. TEJERA states, "I have the license to send the messages…I buy the list [of numbers] from the government."

25.     Upon information and belief, Defendants use an internet based program to upload a list containing tens of thousands of consumers' cellular telephone numbers whereupon the subscribers to said telephones are later simultaneously "blasted" by a commercial text message sent by Defendants; the text message often lists the "caller" as only a telephone number, a number which does not accept incoming calls, however, the text message contains a different telephone number in the body of the text message; the number contained within the text message is associated with a disposable cellular telephone, which helps to obfuscate the identity of the caller. *See generally*, *Pimental v. Google Inc.*, Slip Copy, 2012 WL 691784, N.D.Cal., March 02, 2012 (NO. C-11-02585-YGR) (allegations of internet-based mass texting program were sufficient to survive motion to dismiss).

## **CLASS ACTION ALLEGATIONS**

26.     This action is brought on behalf of a class consisting of (i) all persons in the United States; (ii) who were sent commercial text messages from Defendants or Defendants' agent(s) (iii) to their cellular telephone; (iv) wherein said text messages were sent using an automatic telephone dialing system or a device which has the capacity be used as same; (v) and without the prior express consent of the entrant; (vi) during the four year period prior to the filing of the complaint in this action through the date of certification.[2]

Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entity in which the Defendants have a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned as well as the Judge's immediate family. Plaintiffs reserve the right to amend the above-stated Class definition based upon facts learned in discovery.

27.     Plaintiffs allege on information and belief based upon the Defendants' use of mass text messages that the class is so numerous that joinder of all members of the class is impractical. There are more than forty-one (41) individuals in the Class as previously defined herein.

28.     There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class

---

[2] The members of the putative class may be referred to herein as "the Class."

members. The common factual and/or legal issues common to each class member are as follows:

    (a)    Whether Defendants' conduct is governed by the TCPA?

    (b)    Whether the mobile spam sent by Defendants violated the TCPA?

    (c)    Are the class members entitled to treble damages based upon the willfulness of Defendants' conduct?

    (d)    Whether Defendants should be enjoined from engaging in such conduct in the future?

29. Plaintiffs' claims are typical of those of the class members. All claims are based on the same facts and legal theories.

30. Plaintiffs will fairly and adequately protect the interests of the class. They have retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

31. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    (1)    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

   (2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

32. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

33. Plaintiffs request certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

## COUNT I
## NEGLIGENT VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

34. Plaintiffs incorporate Paragraphs 1 through 33.

35. Defendants made unsolicited commercial text calls to potential customers (i.e. members of the class) using an automatic telephone dialing system.

36. The calls were made without the prior express consent of the parties.

37. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and in favor of the Class, and against Defendants for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages at $500 dollars per call for negligent violations of the TCPA;

(c) An injunction requiring Defendants to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

## COUNT II
## WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

38. Plaintiffs incorporate Paragraphs 1 through 33.

39. Defendants made unsolicited commercial text calls to potential customers (i.e. members of the class) using an automatic telephone dialing system.

40. The calls were made without the prior express consent of the parties.

41. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiffs requests that the Court enter judgment in their favor and in favor of the Class, and against Defendants for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(c) An injunction requiring Defendants to cease all communications in violation of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated this 5th day of June, 2012.

Respectfully submitted,

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiffs and the putative class*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651